## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELLIOT J. SCOTT** | **CIVIL ACTION** |
| **A/K/A CALVIN SCOTT** | |
| **VERSUS** | **NO.  07-6430** |
| **BURL CAIN, WARDEN** | **SECTION "N"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Elliot J. Scott a/k/a Calvin Scott, is incarcerated in the Louisiana

State Penitentiary in Angola, Louisiana.[2]  On February 17, 1997, Scott was charged by

bill of information in Orleans Parish with simple robbery.[3]  The Louisiana Fourth Circuit

Court of Appeal summarized the facts of the case as follows:

> On January 19, 1997, Elliott [sic] Scott (a/k/a Calvin Scott), the
> defendant, entered the Winn-Dixie grocery store on Almonaster Boulevard
> and got in the checkout line.  When the cashier rang up a sale and opened
> the cash drawer, the defendant pushed ahead of the customer in front of
> him, jumped over the counter, grabbed cash from the drawer and attempted
> to flee.  The cashier screamed, and this alerted the manager.  The manager
> ran after and apprehended the defendant, who had stuffed the cash in his
> mouth. When the police arrived, the manager was restraining the defendant
> on the ground in the store parking lot.

State v. Scott, 775 So.2d 717 (La. App. 4th Cir. 2000) (Table); State Record Volume 2

of 5, Louisiana Fourth Circuit Court of Appeal Opinion, 99-KA-2470, p. 2, November

8, 2000.

Scott was tried before the state trial court without a jury on June 17, 1997, and he

was found guilty as charged.[4]  The State thereafter filed a multiple bill charging Scott as

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 2/17/97.

[4]St. Rec. Vol. 1 of 5, Trial Minutes, 6/17/97; St. Rec. Vol. 2 of 5, Trial Transcript, 6/17/97.

2

a third offender.[5]  The state trial court later found him to be a second offender on the basis that his oldest conviction was outside of the applicable time period.[6]  The State sought review of that finding in the Louisiana Fourth Circuit Court of Appeal.[7]

The Louisiana Fourth Circuit reversed the trial court and remanded the case for Scott to be sentenced as a third offender.[8]  Consequently, on May 11, 1998, the state trial court sentenced Scott as a third offender to serve life in prison without benefit of probation or suspension of sentence.[9]  Scott's counsel moved orally for reconsideration of the sentence, and the motion was taken under advisement.[10]

After being ordered to do so by the Louisiana Fourth Circuit, the state trial court granted Scott an out-of-time appeal at a hearing held on October 7, 1998.[11]  On appeal, Scott raised six grounds for relief:[12] (1) Review of his sentence is premature because the

---

[5]St. Rec. Vol. 1 of 5, Multiple Bill (undated).

[6]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 8/8/97; Multiple Bill Hearing Transcript, 8/8/97.

[7]St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 97-K-1842, 8/21/97.

[8]St. Rec. Vol. 4 of 5, 4th Cir. Order, 97-K-1842, 9/16/97.

[9]St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/11/98; Sentencing Transcript, 5/11/98.

[10]Id.

[11]St. Rec. Vol. 1 of 5, 4th Cir. Order, 98-K-1974, 9/16/98; St. Rec. Vol. 1 of 5, Minute Entry, 10/7/98.

[12]St. Rec. Vol. 2 of 5, Appeal Brief, 99-KA-2470, 10/22/99; Supplemental Appeal Brief, 99-KA-2470, 3/10/00; Supplemental Appeal Brief, 99-KA-2470, 4/10/00.

3

state trial court failed to rule on the motion to reconsider the sentence. (2) The life sentence is excessive. (3) The state trial court erred in finding him to be a triple offender by ex post facto application of the law. (4) The evidence was insufficient to prove simple robbery. (5) The state trial court erred in failing to ascertain that defendant knowingly and voluntarily waived his right to a jury trial. (6) The state trial court erred in failing to advise defendant of his right to remain silent at the multiple bill hearing.

The Louisiana Fourth Circuit affirmed the conviction and the multiple offender adjudication, finding Scott's substantive claims without merit.[13]  The court also resolved that the state trial court erred by imposing an illegally lenient sentence when it failed to prohibit parole eligibility.  The court further found merit in Scott's first claim, remanded the matter for the state trial court to rule on Scott's motion to reconsider the sentence and reserved Scott's right to appeal his sentence after that ruling.

Scott filed a pro se writ application with the Louisiana Supreme Court, apparently challenging the appellate court's ruling.[14]  While this application was pending, Scott filed a second application with the Louisiana Supreme Court on February 28, 2001, raising only two of his appellate claims, one challenging the ex post facto application of the

---

[13]State v. Scott, 775 So.2d at 717 (Table); St. Rec. Vol. 4th Cir. Opinion,99-KA-2470, 11/8/00.

[14]St. Rec. Vol. 5 of 5, La. S. Ct. Letter, 2000-KO-3337, 12/6/00 (postmarked 11/27/00).  The state court record does not contain a copy of this writ application or any indication of what was raised in that application.

applicable time period concerning the oldest of his three convictions and the other challenging the failure to advise him of his right to remain silent at the multiple bill hearing.[15]

The second writ application was denied by the Louisiana Supreme Court on October 12, 2001, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[16]   On November 9, 2001, the Louisiana Supreme Court denied the first writ application without reasons.[17]

That same day, November 9, 2001, the Louisiana Fourth Circuit issued an order directing the state trial court to rule on Scott's 1998 motion to reconsider the sentence, as it had previously ordered in its direct appeal decision.[18]   The record contains no action by the state trial court.

---

[15]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 01-KH-0521, 2/28/01 (signed 11/25/00); La. S.Ct. Letter, 2001-KH-521, 2/28/01 (postmarked 1/22/01).

[16]State ex rel. Calvin Scott v. State, 799 So.2d 499 (La. 2001); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2001-KH-0521, 10/12/01.  In Melinie, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[17]State v. Scott, 801 So.2d 362 (La. 2001); St. Rec. Vol. 1 of 5, La. S. Ct. Order, 2000-KO-3337, 11/9/01.

[18]St. Rec. Vol. 1 of 5, 4th Cir. Order, 2001-K-1871, 11/9/01.

On June 20, 2003, Scott wrote a letter to the state trial court, again requesting a ruling on the 1998 motion to reconsider the sentence.[19]  Thereafter, on September 22, 2003, the state trial court held a hearing on the motion.[20]  On January 12, 2004, the state trial court denied the motion in open court and counsel moved for an appeal.[21]

Scott filed with the state trial court, on January 25, 2004, a notice of his intent to seek a direct appeal from his sentence.[22]  He also filed a motion to set the time for filing a direct appeal.[23]  On March 23, 2004, the Louisiana Fourth Circuit ordered the trial court to rule on the motion for appeal.[24]

The state trial court held a hearing on April 21, 2004, at which it entertained argument regarding whether Scott had a retained the right to appeal the denial of the

---

[19]St. Rec. Vol. 3 of 5, Letter to the Court, 6/20/03.

[20]St. Rec. Vol. 1 of 5, Motion Hearing Minutes, 9/22/03; St. Rec. Vol. 3 of 5, Motion Hearing Transcript, 9/22/03.

[21]St. Rec. Vol. 1 of 5, Motion Hearing Minutes, 1/12/04; St. Rec. Vol. 3 of 5, Motion Hearing Transcript, 1/12/04.

[22]St. Rec. Vol. 3 of 5, Notice of Intent to Apply for Direct Appeal, 1/25/04.

[23]St. Rec. Vol. 1 of 5, Motion Setting Time for Filing Application for Direct Appeal, copy sent to trial court on 4/5/04.

[24]St. Rec. Vol. 1 of 5, 4th Cir. Order, 2004-K-0343, 3/23/04.

motion to reconsider the sentence and the sentence itself.[25]   The state trial court ultimately granted leave to appeal.[26]

On appeal, Scott's counsel raised four grounds for relief:[27] (1) The life sentence is excessive. (2) The life sentence is cruel and unusual. (3) The habitual offender sentencing statute violates the Eighth Amendment. (4) The sentencing statute violates the right to a jury trial.  The Louisiana Fourth Circuit affirmed the sentence on December 8, 2004, finding no merit to any of the claims.[28]

The Louisiana Supreme Court denied Scott's subsequent writ application to that court on April 22, 2005.[29]  Scott's application for writ of certiorari filed with the United States Supreme Court was also denied on October 3, 2005.[30]  Scott's conviction became final upon the denial of his application for writ of certiorari.  Giesberg v. Cockrell, 288 F.3d 268 (5th Cir. 2002) (for purposes of the AEDPA, a state conviction becomes final

---

[25]St. Rec. Vol. 3 of 5, Motion Hearing Transcript, 4/21/04.

[26]St. Rec. Vol. 1 of 5, Minute Entry, 4/21/04.

[27]St. Rec. Vol. 3 of 5, Appeal Brief, 2004-KA-1425, 9/23/04.

[28]State v. Scott, 888 So.2d 1170 (La. App. 4th Cir. 2004) (Table); St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2004-KA-1425, 12/8/04.

[29]State v. Scott, 899 So.2d 557 (La. 2005); St. Rec. Vol. 5 of 5, La. S.Ct. Order, 2005-K-0088, 4/22/05; La. S.Ct. Writ Application, 05-K-88, 1/10/05; St. Rec. Vol. 3 of 5, La. S.Ct. Letter, 2005-K-88, 1/10/05 (postmarked 1/7/05).

[30]Scott v. Louisiana, 546 U.S. 893 (2005). According to the docket sheet, available through Westlaw, this writ application was filed with the court on July 15, 2005.

when a petition for certiorari is denied by the United States Supreme Court), <u>cert. denied</u>, 537 U.S. 1072 (2002); <u>Crutcher v. Cockrell</u>, 301 F.3d 656 (5th Cir. 2002); <u>Hoffman v. Louisiana</u>, 768 So.2d 592 (La.) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), <u>cert. denied</u>, 531 U.S. 946 (2000).

Six months later, on April 6, 2006, Scott alleges to have mailed an application for post-conviction relief to the state trial court, in which he raised the following claims:[31] (1) He was not charged by grand jury indictment. (2) The state trial court erred in determining the waiver of the right to a jury trial. (3) His counsel provided ineffective assistance by failing to investigate and to object to the sufficiency of the evidence at the multiple bill hearing. (4) His counsel provided ineffective assistance of counsel because the State of Louisiana insufficiently funds the indigent defender board, leaving his counsel overworked and unable to challenge the essential elements of simple robbery or to obtain an investigator to research and challenge the predicate offenses in the multiple bill. The record does not contain a ruling on this application by the state trial court.

---

[31]The state court record does not contain a file-stamped copy of this application for post-conviction relief. A copy of the purported pleading is attached to Scott's subsequent writ application to the Louisiana Fourth Circuit, along with his prison mail receipts. St. Rec. Vol. 4 of 5, Uniform Application for Post Conviction Relief (copy); Mail Receipt, 4/6/06.

As a result, Scott filed a writ application with the Louisiana Fourth Circuit on August 9, 2006, seeking review of his post-conviction claims.[32]  After review of the claims raised, the Louisiana Fourth Circuit denied the application on August 29, 2006, finding no basis for his entitlement to relief.[33]  The Louisiana Supreme Court also denied without reasons Scott's subsequent writ application to that court by order issued June 15, 2007.[34]

Earlier, Scott apparently returned to the state trial court to file a motion seeking to correct his sentence.[35]  He also filed a motion to review his sentence on or about March 6, 2007.[36]

On March 19, 2007, the state trial court denied the motion to review the sentence.[37]  The motion to correct the sentence was apparently set for post-conviction hearing, which was continued without date on April 27, 2007.[38]

---

[32]St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 2006-K-1042, 8/9/06.

[33]St. Rec. Vol. 4 of 5, 4th Cir. Order, 2006-K-1042, 8/29/06.

[34]State ex rel. Scott v. State, 958 So.2d 1186 (2007); St. Rec. Vol. 5 of 5, La. S.Ct. Writ Application, 06-KH-2396, 10/4/06 (postmarked 9/15/06).

[35]St. Rec. Vol. 1 of 5, Motion to Correct an Illegally Lenient Sentence (undated).

[36]St. Rec. Vol. 1 of 5, Motion to Review Sentence, 3/6/07 (copy filed 3/27/07).

[37]St. Rec. Vol. 1 of 5, Trial Court Order, 3/19/07.

[38]St. Rec. Vol. 1 of 5, Minute Entry, 3/26/07; Minute Entry, 4/27/07.

Scott later filed a request to reset the post-conviction hearing with the Louisiana Fourth Circuit.[39]   The motion was construed as a writ application and granted on September 14, 2007, for the sole purpose of transferring it back to the state trial court.[40] Thereafter, the state trial court set a hearing for December 5, 2007, at which time the hearing was again continued.[41]   The record does not contain a resolution of this proceeding.

II.   <u>FEDERAL HABEAS PETITION</u>

On October 3, 2007, Scott filed a petition for federal habeas corpus relief in this court raising seven grounds for relief:[42] (1) The life sentence imposed is excessive, amounts to cruel and unusual punishment and violates due process. (2) Louisiana's habitual offender sentencing statute violates the ban on cruel and unusual punishment as applied to petitioner. (3) Louisiana's habitual offender sentencing denies the right to a jury trial. (4) The State erred in failing to charge him by grand jury indictment. (5) The state trial court erred when it failed to determine whether he knowingly and voluntarily waived his right to a jury trial. (6) He was denied effective assistance of counsel when

---

[39]The record does not contain a copy of this writ application.  <u>See</u> St. Rec. Vol. 1 of 5, 4th Cir. Order, 2007-K-0992, 9/14/07.

[40]St. Rec. Vol. 1 of 5, 4th Cir. Order, 2007-K-0992, 9/14/07.

[41]St. Rec. Vol. 1 of 5, Minute Entry, 12/5/07.

[42]Rec. Doc. No. 1.

counsel failed to investigate, prepare and object to the sufficiency of the evidence at the multiple bill hearing. (7) He was denied effective assistance of trial counsel because the State of Louisiana failed properly to fund the indigent defender's office.

The State filed an opposition in response to Scott's petition, conceding exhaustion of the claims and timeliness of the petition. The State argues that the claims are without merit and that Scott is not entitled to relief.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[43] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Melancon's petition, which was filed by counsel with this Court on September 24, 2007.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and

---

[43]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State has not raised any of these

preliminary defenses, and I do not find any such defenses to be warranted in this case.

IV.   STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for

questions of fact, questions of law and mixed questions of fact and law in federal habeas

corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be

correct . . . and we will give deference to the state court's decision unless it 'was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

12

2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert.</u> <u>denied</u>, 531 U.S.

849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210

F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000);  <u>Penry</u>, 532 U.S. at 792-93;

<u>Hill</u>, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert.</u>

<u>denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

13

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.  SENTENCE IS EXCESSIVE AND CRUEL AND UNUSUAL (CLAIM NOS. 1 AND 2)

Scott argues that his life sentence as a third offender is excessive, cruel and

unusual and grossly disproportionate to the crime he committed, all in violation of the

due process clause.  He also argues that the impropriety of the sentence is evidenced by

the fact that the habitual offender statute was later amended to require that all of the

crimes leading to third offender status must be crimes of violence.

The Louisiana Fourth Circuit addressed these claims in Scott's second appeal from

the denial of the motion to reconsider his sentence.[44]  The court held that Scott's life

sentence was not excessive or disproportionate.  The court considered the fact that two

of Scott's three convictions were for violent crimes, and at the time, the statute only

required that one of the three be a violent crime.  His prior convictions were for simple

burglary in 1986 and simple burglary and aggravated battery in 1994.  In addition, the

court noted that Scott was on parole for the 1994 convictions when this simple robbery

was committed.  The court resolved that Scott's life sentence was the statutory minimum

---

[44]St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2004-KA-1425, 12/8/04.  Scott raised the claim in his
original appeal but ruling on his sentencing issues was deferred pending resolution of the outstanding
motion to reconsider the sentence.  St. Rec. Vol. 4th Cir. Opinion,99-KA-2470, 11/8/00.

and mandatory sentence under La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(ii) and that he failed to present exceptional mitigating factors to warrant a downward departure.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes v. Butler, 825 F. 2d 921, 923-24 (5th Cir. 1987); Turner v. Cain, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996);  McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).  When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses."  McGruder, 954 F. 2d at 316.

As outlined above, the Louisiana courts made this same comparison in considering Scott's sentence.    At the time of Scott's conviction, La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(ii) mandated that a life term be imposed on a third felony offender like Scott:

> A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:  . . .
> (b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then: . . .
> (ii) <u>If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13)</u> or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, <u>the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.</u>

(emphasis added).

Under Louisiana law, a crime of violence is defined as an offense that has as an element, the use, the attempted use, or threatened use of physical force against the person

of another.  La. Rev. Stat. Ann. § 14:2(13).  Louisiana law lists simple robbery and aggravated battery as crimes of violence.  Id.

Scott was convicted of simple robbery by the state trial court on June 17, 1997. The record reflects that during this crime Scott aggressively pushed past another customer in order to jump over the counter to rob the cashier, who was frightened by him.[45]  The Louisiana Fourth Circuit also determined on appeal that, in the 1994 conviction for simple burglary and aggravated battery, the evidence showed that Scott, while trying to steal from a vending machine, hit a University of New Orleans police officer in the head with a crow bar and someone was shot when the officer's gun discharged.

The state courts resolved that the current simple robbery conviction was a violent crime in light of the physical force used to accomplish the theft.  The previous aggravated battery also was a violent crime as a result of the injury to others.  As such, under Louisiana law, these crimes were a sufficient basis for imposition of the life sentence for Scott's third offense.

Scott concedes that his life sentence was statutorily mandated.  He argues, however, that he is an exception to the rule because he is not generally a violent criminal

---

[45]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 13, 16, 19, 6/17/97

and because he previously used narcotic drugs.  As such, he argues that the life sentence should have been reduced and is therefore cruel and unusual.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'"  Ewing v. California, 528 U.S. 11, 23 (2003) (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)).  The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality.  Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).  As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense.  Smallwood, 73 F.3d at 1346-47.

Under the law as it was at the time of Scott's conviction, Louisiana courts consistently imposed the mandatory life sentence to third offenders similarly situated. See e.g., State v. Randall, 776 So.2d 424 (La. 2000) (simple robbery was third felony, second crime of violence); State v. Hopkins, 774 So.2d 1178 (La. App. 2d Cir. 2000); State v. Smith, 777 So.2d 584 (La. App. 4th Cir. 2000); State v. Martello, 748 So.2d 1192 (La. App. 4th Cir. 1999) (notwithstanding evidence of prior drug use); State v. Windham, 748 So.2d 1220 (La. App. 5th Cir. 1999); State v. Ball, 748 So.2d 1239 (La. App. 2d Cir. 1999); State v. Short, 725 So.2d 23 (La. App. 4th Cir. 1998); State v. Ignot,

18

701 So.2d 1001 (La. App. 2d Cir. 1997); <u>See</u>, <u>State v. Davis</u>, 745 So.2d 136 (La. App. 4th Cir. 1999) (remanded for resentencing to mandatory life); <u>State v. Lacoste</u>, 695 So.2d 1121 (La. App. 4th Cir. 1997) (10 year sentence given to third offender with prior simple robbery conviction vacated and remanded in light of the mandatory life sentence not considered by the trial court).

To warrant a downward departure as an exception to the life sentence mandate, Louisiana courts require that a defendant present clear and convincing evidence that the life sentence does not meet the goals of the intended punishment, <u>e.g.</u> to prevent recidivism, and amounts to a purposeless and needless imposition of pain and suffering. <u>State v. Johnson</u>, 709 So.2d 672, 675 (La. 1998).  Scott did not and has not here met this burden.

As discussed above, Scott did engage in violent crimes as defined by Louisiana law.  In addition, Scott's alleged prior drug use, without more, is not sufficient to warrant a downward departure under Louisiana law.  <u>State v. Williams</u>, 788 So.2d 515 (La. App. 4th Cir. 2001) (third offender); <u>State v. Bazile</u>, 762 So.2d 106 (La. App. 4th Cir. 2000) (fourth offender).

Scott relies heavily on <u>Robinson v. California</u>, 370 U.S. 660 (1962), in which the United States Supreme Court held that the California statute which made addiction to narcotic drugs a criminal offense, punishable as such, was violative of the Eighth and

19

Fourteenth Amendments to the United States Constitution.  The <u>Robinson</u> Court made clear that while it is unconstitutional to impose criminal sanctions on a person simply because he is addicted to drugs, it is <u>not</u> unconstitutional to punish overt acts which may originate from drug addiction.  <u>Robinson</u>, 370 U.S. at 665.

In this case, as found by the Louisiana courts, Scott was not punished for his alleged prior drug use, but instead for the crime he actually committed.  The Louisiana Fourth Circuit resolved that even if his latest simple robbery was motivated by drug use, Scott had no criminal convictions involving drugs or drug use.  This is not inconsistent with <u>Robinson</u>.  <u>See</u> <u>Bailey v. U.S.</u>, 386 F.2d 1 (5th Cir. 1967) (finding that <u>Robinson</u> did not prohibit punishment for crime even if motivated by drug use). The sentence imposed under Louisiana's habitual offender law was based on his status as a third offender for non-drug offenses and not because he may have been a drug user.

Nothing Scott has presented distinguishes his situation as an exception to the cases cited above in which the same sentence was imposed.  His commission of felony after felony, even if not all violent, warranted the life sentence under Louisiana law at the time.  The imposition of that sentence upon Scott as a third offender was <u>not</u> so extreme that it violated the Eighth or Fourteenth Amendments.

Finally, Scott suggests that, in assessing the excessiveness of his sentence, this court should also consider the fact that the Louisiana legislature, in June 2001, amended

20

La. Rev. Stat. Ann. § 15:529.1(A)(1)(b)(ii) to provide for a mandatory life sentence "[i]f the third felony <u>and</u> the two prior felonies are felonies defined as a crime of violence." (emphasis added).  However, the state legislature, in passing the above amendment, clearly provided that said amendment "shall only have prospective effect."  Accordingly, the fact that Section 15:529.1(A)(1)(b)(ii), as it was amended in 2001, would not be applicable to Scott does not provide a basis upon which to find that the life sentence he received, which was in accordance with applicable law at the time, was excessive.

For the reasons discussed above, the state courts' finding that Scott's sentence was not excessive, was not cruel and unusual, and did not violate due process, was not contrary to established Supreme Court case law, nor was it an unreasonable application of that precedent.  This claim is without merit.

## VI.   SENTENCING STATUTE DENIES RIGHT TO JURY TRIAL (CLAIM NO. 3)

Scott alleges that Louisiana's habitual offender law is unconstitutional because it allows a judge to enhance a sentence without benefit of a jury.  While Scott relies on the Supreme Court opinion in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), to support his claim, he also suggests that <u>Apprendi</u> should be overruled insofar as it excluded the fact of prior convictions from its holding.

Scott raised this claim in the Louisiana Fourth Circuit in his appeal from the denial of his motion to reconsider the sentence.  The court denied relief, citing <u>Apprendi</u> and

21

finding that it did not apply to the determination of prior offenses.  This was the last reasoned opinion on the issue.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

The United States Supreme Court has held that the Constitution does not require that proof of the fact of a prior conviction be brought to a jury.  <u>Apprendi</u>, 530 U.S. at 490.  In <u>Apprendi</u>, the Supreme Court stated that "<u>[o]ther than the fact of a prior conviction</u>, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added) <u>Apprendi</u>, 530 U.S. at 490.  The Supreme Court reiterated this rule in its subsequent rulings in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>U.S. v. Booker</u>, 543 U.S. 220 (2005), recognizing an exception to the <u>Apprendi</u> rule for prior convictions and habitual offender adjudications.  <u>Accord</u> <u>Williams v. Terrell</u>, 2006 WL 1751059 (W.D. La. May 2, 2006) (discussing the holdings and non-retroactivity of these cases).

Even prior to <u>Apprendi</u>, the United States Court of Appeals for the Fifth Circuit also held that the Sixth Amendment does not require a trial by jury for multiple offender proceedings.  <u>Buckley v. Butler</u>, 825 F.2d 895, 904 n.3 (5th Cir. 1987).  Instead, bestowing such a right upon a defendant is left to state law, and in Louisiana there is no such provision.  <u>Id</u>. (citing La. Rev. Stat. Ann. § 15:529.1(D)); <u>see</u> La. Rev. Stat. Ann. § 15:529.1(D)(2) ("Following a contradictory hearing, the <u>court shall find</u>" that the

defendant is a second, third or fourth offender) (emphasis added); <u>Id</u>. at § 15:529.1(D)(3)

("When the <u>judge finds</u>" that defendant has been convicted of a prior felony . . .) (emphasis added).

In addition, to the extent that Scott suggests that <u>Apprendi</u> should be overruled, that is not the province of this court.  Furthermore, as noted above, the Supreme Court has itself already reaffirmed its decision to exclude prior convictions from its <u>Apprendi</u> rule.  <u>Blakely</u>, 542 U.S. at 296; <u>U.S. v. Booker</u>, 543 U.S. at 220.

There is no constitutional requirement that Scott have a jury during the multiple offender proceedings.  The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent.  Scott's claim is without merit.

VII.    <u>NOT CHARGED BY GRAND JURY INDICTMENT (CLAIM NO. 4)</u>

Scott alleges that he should have been charged by grand jury indictment for the simple robbery charge, since he was ultimately facing a life sentence as a third offender. The State argues that Scott fails to state a cognizable federal issue and that the claim is otherwise without merit.

Scott raised this issue for the first time in his application for post-conviction relief, which was denied without reasons by the Louisiana Fourth Circuit and the Louisiana Supreme Court.

Under Louisiana law, "prosecution" of an offense punishable by death or life imprisonment "shall be instituted by indictment by a grand jury," while other "prosecutions [felonies] in a district court shall be instituted by indictment or by information." La. Code Crim. Proc. Ann. art. 382. An "information," like that used to charge Scott with simple robbery, is a written charge of crime made and signed by the district attorney and filed in the court having jurisdiction. La. Code Crim. P. art. 384.

However, a multiple offender proceeding is not a prosecution of this type. Enhancement proceedings are not determinative of guilt or innocence and do not offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. Buckley, 825 F.2d at 902-03. Thus, "[t]he Due Process Clause does not, . . . require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." Parke v. Raley, 506 U.S. 20, 32 (1992) (quoting Medina v. California, 505 U.S. 437, 451 (1992)).

Scott has not identified any Supreme Court precedent or other federal authority, and my research has located none, that would require that an initial state criminal prosecution be charged by grand jury indictment in anticipation that the State may later pursue a habitual offender proceeding. There is nothing here that gives rise to a constitutional violation reviewable by this habeas court. To the extent he alleges a

possible misapplication of state law, though I find none, this would not constitute an independent basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).

Scott has failed to establish that the denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court law. Scott is not entitled to relief on this claim.

VIII.   INADEQUATE WAIVER OF RIGHT TO JURY TRIAL (CLAIM NO. 5)

Scott alleges that, minutes prior to trial, he was told by the state trial court that he had a choice between being tried by a judge or by a jury and was required to make a selection.  Scott claims that he did not have an opportunity to discuss with his counsel the trial strategy or his choice between judge and jury trial.  He contends that the state trial court failed to advise him of the consequences of his waiver or to assure that he made a knowing and intelligent waiver.

Scott first raised this claim in his original direct appeal.  The Louisiana Fourth Circuit found the claim to be without merit because the trial court had personally addressed Scott, who stated he preferred trial by judge.  The Louisiana Supreme Court offered no additional reasons in its denial of Scott's subsequent writ application.  When Scott raised the claim again in his application for post-conviction relief, both the Louisiana Fourth Circuit and the Louisiana Supreme Court denied relief without providing reasons.

The United States Supreme Court has continually recognized that the right to a trial by jury is a protection granted to a person accused of a crime by Article III[46] and the Sixth Amendment[47] of the United States Constitution which that person has the power to waive.  Patton v. United States, 281 U.S. 276, 298 (1930).  The waiver of a constitutional right must be knowingly and voluntarily made with sufficient awareness of the relevant circumstances.  Brady v. United States, 397 U.S. 742, 748 (1970); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); Mata v. Johnson, 210 F.3d 324, 329 (5th Cir. 2000).

Under federal constitutional law, a knowing and intelligent waiver of the right to a jury trial exists where a criminal defendant understands "that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge."  United States ex rel. Johnson v. Page, 1995 WL 430942 (N.D. Ill. July 18, 1995) (internal quotation marks omitted), aff'd, 78 F.3d 586 (7th Cir. 1996); see also, U.S. ex rel. Williams v. DeRobertis, 715 F.2d 1174, 1180 (7th Cir. 1983).  The waiver of a constitutional right

---

[46]Article III, § 2, Cl. 3 provides that "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury."

[47]The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  The Sixth Amendment protections are apply to the States through the Fourteenth Amendment.  Gideon v. Wainwright, 372 U.S. 335, 342-45 (1963).

cannot be presumed from a silent record but instead must be shown affirmatively in the record.  Boykin v. Alabama, 395 U.S. 238, 242 (1969); Johnson, 304 U.S. at 464.  On federal habeas review, the state courts' findings of a valid waiver are presumed correct unless the petitioner can establish that the findings are not supported by the record.  Espada v. Dretke, 2005 WL 579596 (N.D. Tex. Mar. 10, 2005) (citing Armstead v. Scott, 937 F.3d 202, 210 (5th Cir. 1995)).

The record in this case is not silent as to Scott's waiver.  The record reflects the following exchange prior to trial and after a conference with counsel at the bench:[48]

> BY THE COURT:          All right.  Sir, you have a right to be tried before a Judge or a Jury.  Make your selection.
>
> BY THE DEFENDANT:  Judge, your honor.
>
> BY THE COURT:          All right.  You want a judge trial. . . .

By agreeing on the record, Scott personally and affirmatively acknowledged his choice between judgment by a jury or by the judge.  The trial court accepted Scott's waiver.  This was sufficient to establish a waiver of the fundamental right to a jury trial.  U.S. ex rel. Williams, 715 F.2d at 1180.

In addition, Scott has never contended that he did not in fact understand the consequences of his waiver.  His only challenge to the voluntariness of his waiver is that

---

[48]St. Rec. Vol. 2 of 5, Trial Transcript, p. 3, 6/17/97.

the state trial court did not conduct on the record a more in-depth discussion of the waiver. However, neither the Constitution nor Supreme Court precedent require the trial court to conduct an on-the-record colloquy with a defendant prior to a waiver of the right to a jury trial in this context. <u>Marone v. United States</u>, 10 F.3d 65, 67 (2nd Cir. 1993); <u>see also</u>, <u>Jells v. Ohio</u>, 498 U.S. 111 (1990) (denying certiorari without reasons in a case involving a state court's failure to describe to a defendant the costs and benefits of a jury waiver).

In this regard, Scott's reliance on <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), for the contention that a full colloquy on the consequences of his waiver was required is misplaced. The Court in that case was discussing the waiver of certain constitutional rights in the context of a guilty plea. Scott did not enter a guilty plea and the <u>Ruiz</u> holding is not applicable.

For these reasons, the petitioner has failed to establish that the trial court's ruling was contrary to or an unreasonable application of Supreme Court law. Scott is not entitled to relief on this claim.

IX.    <u>INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. 6 AND 7)</u>

Scott alleges that he received ineffective assistance because his counsel did not properly prepare for the multiple offender proceeding, which prevented him from challenging the validity of the 1994 predicate offense. He also claims that his counsel

was rendered ineffective because the State of Louisiana does not properly fund the indigent defender's office.  He claims that, as a result, his trial counsel was overworked and unable to challenge the elements of the simple robbery charge.  He also alleges that counsel did not have the resources properly to investigate the predicate offenses and challenge the multiple bill.

These claims were first raised in Scott's application for post-conviction relief, which was denied without reasons by the Louisiana Fourth Circuit and the Louisiana Supreme Court.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in  Strickland v. Washington, 466 U.S. 668 (1984), which the state trial court cited and applied.  In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000),

cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.     CHALLENGE TO THE 1994 CONVICTION

Scott first contends that counsel failed adequately to challenge the admission of the 1994 conviction for simple robbery and aggravated battery. He claims that this resulted in the finding that he was a third offender, in spite of the State's failure to meet

31

its burden of proof.  Specifically, he alleges that his counsel allowed the State to rely on

an incomplete transcript of the plea colloquy to support the use of the 1994 conviction.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. §

15:529.1, the State is required to prove the existence of a prior felony conviction and that

the defendant is the same person who was convicted of the prior felony.  State v. Shelton,

621 So.2d 769 (La.1993); State v. Staggers, 2003 WL 22438958 at *5-*6 (La. App. 5th

Cir. 2003) (citing State v. Davis, 829 So.2d 554 (La. App. 5th Cir. 2002)); State v.

Warfield, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003).[49]  Certified copies of

court records evidencing prior convictions are sufficient to prove the prior conviction.

State v. Staggers, 2003 WL 22438958 at *6.  However, independent proof, such as

matching fingerprints and other vital information, is required to show that the defendant

is the same person identified in those records.  State v. Walker, 795 So.2d 459, 463 (La.

App. 5th Cir. 2001), writ denied, 826 So.2d 1115 (La. 2002).

---

[49]The sufficiency of the state's evidence on habeas review is governed by the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. Donahue, 231 F.3d at 1004; Gilley, 968 F.2d at 467; Guzman, 934 F.2d at 82; Caddell v. Quarterman, 2007 WL 655759 at *6 (S.D. Tex. 2007) (Jackson v. Virginia is the appropriate standard to evaluate sufficiency of evidence in a multiple offender proceeding).  In this case, Scott has not directly challenged the sufficiency of that evidence.

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights.

<u>State v. Shelton</u>, 621 So.2d at 779 (footnotes omitted).

Scott seeks review of the state courts' determination that he is a third multiple offender based only on his allegation that his counsel failed to challenge the constitutionality of the 1994 pleas of guilty to simple robbery and aggravated battery. At the hearing, the State introduced the testimony of Officer Victor Bono, an expert fingerprint examiner for the New Orleans Police Department.[50]  In connection with his

---

[50]St. Rec. Vol. 2 of 5, Multiple Bill Hearing Transcript, pp. 2-4, 8/8/97.

33

testimony, the State submitted four exhibits:[51] (1) the fingerprint card of prints taken from Scott on the day of the hearing; (2) certified copies of the arrest registers bearing Scott's fingerprints in connection with the arrests on October 22, 1986, and January 17, 1993; (3) certified copies of the bills of information in Criminal Case Nos. 317-128 and 366-472, on which Scott's fingerprints were placed at the time of the prior convictions; and (4) certified copies of records from the convictions.[52]  The record does not include a description of the latter set of records.

Bono testified at the hearing that the fingerprints on the arrest registers and bills of information from the  1986 and 1994 convictions matched the prints taken from Scott on the day of the hearing.[53]  Thus, the fingerprint evidence established that Scott was the person convicted in 1986 and 1994 under the name Calvin Scott.  Scott also took the stand and admitted that he was the same person who was convicted in those cases under the name Calvin Scott.[54]

Scott did not, however, offer any affirmative evidence at the hearing to show an infringement of his rights or a procedural irregularity in the taking of the prior pleas of guilty.  Had he done so, the State would have been required to prove constitutionality

---

[51]Id., pp. 2-4.

[52]It appears that the State entered these exhibits in globo without outlining the contents.  Id., p.4.

[53]Id., pp. 3-4.

[54]Id., pp. 5-6.

34

through presentation of a "perfect transcript" showing a colloquy between judge and Scott in which Scott was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers.

Scott argues that the transcript of the 1994 proceeding was not reliable evidence because it was not complete and did not show a specific waiver of his right to a jury trial. He contends that his counsel should have objected to this evidence at the multiple offender hearing so that the burden would revert back to the State. He claims that her failure to do so resulted in him being found a third offender.

A review of the transcript from the 1994 guilty plea reflects that at some point the transcript tapes ended and the court reporter was unable to complete the transcription of the entire proceeding.[55] It is true that this was not a complete representation of the entire hearing.

However, in the prepared portion of the transcript, it is clear that the state trial court advised Scott that, by entering the guilty pleas, he was giving up his right to trial by jury on each count, his right to call witnesses, his right to confront and cross-examine the State's witnesses, his right to appeal, his right to remain silent and his right against self-incrimination.[56] To each of these, Scott answered "yes," except as to the waiver of

---

[55]St. Rec. Vol. 5 of 5, Transcript of Guilty Plea (366-472), p. 6, 3/23/04.

[56]Id., pp. 4-5.

35

the right to a jury trial.[57]  At that point, the transcript reflects the words "(No audible response)".[58]  Scott suggests that this entry fails to prove a specific waiver of the right to a jury trial.

Scott has not established, however, that counsel's failure to object to the transcript necessarily prejudiced the outcome of the adjudication.  While it is preferred under Louisiana law to have the "perfect transcript" referenced by Scott, it is not an absolute. Louisiana law provides that when the evidence from the prior convictions is not "perfect," the state trial court can look to the evidence presented to see if it establishes that the prior guilty plea was informed and voluntary and made after waiver of the three Boykin rights.  State v. Shelton, 621 So.2d at 779.

In this case, the transcript provides sufficient information to establish that Scott's 1994 was knowing, voluntary, and made with waiver of his constitutional rights.  Scott advised the state court that he wished to enter the pleas of guilty and was doing so without threat or coercion.[59]  As noted above, he clearly acknowledged waiver of each of his rights, except where the transcript does not note an audible response on the tape recording to the waiver of the jury trial.  There is no indication that Scott made a negative

---

[57]Id.

[58]Id., p.4.

[59]St. Rec. Vol. 5 of 5, Transcript of Guilty Plea (366-472), pp. 2-4, 6, 3/23/04.

response and the continued colloquy would indicate that his response to each waiver question was an affirmative waiver.  Moreover, the record demonstrates that Scott was specifically advised of the right to a jury trial, and he persisted in his decision to enter the guilty pleas after being so advised.

The transcript, even if objected to, was sufficient for the state trial court to resolve that the 1994 conviction was an appropriate predicate offense to support the multiple bill. Counsel's failure to object to the use of the transcript was not prejudicial.

Scott has failed to establish that his counsel's preparation, investigation and objections to the multiple bill were deficient or otherwise prejudicial as defined by Strickland and its progeny.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Scott is not entitled to relief on this claim.

B.    UNDERFUNDED INDIGENT DEFENDER'S OFFICE

Scott alleges that his counsel was rendered ineffective in preparing his case as a result of the lack of funding in the indigent defender's office.  He contends that, as a result of the inadequate funding, his appointed counsel did not have adequate investigatory assistance and was overworked and unable properly to challenge the simple robbery charge or the multiple bill.  He argues that, as a result, counsel gave ineffective assistance under Strickland and was prevented from adequately representing him.

37

Scott complains that his counsel was generally unsuccessful at challenging the State's prosecution of a trial and in the multiple offender hearing. However, a conclusory allegation of the constructive denial of counsel does not entitle a petitioner to habeas relief. See Koch v. Puckett, 907 F.2d 524, 530 (5th Cir.1990) (conclusory allegations are insufficient to obtain habeas relief).

In United States v. Cronic, 466 U.S. 648 (1984), the United States Supreme Court held that a defendant may be constructively denied counsel, although an attorney had been appointed to represent him. The Cronic court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding. Cronic, 466 U.S. at 654 n. 11. The Cronic presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of the defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not." Cronic, 466 U.S. at 658-59 (citations omitted). Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high that a case-by-case inquiry is unnecessary." Mickens v. Taylor, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that for <u>Cronic</u> to apply "the attorney's failure must be complete." <u>Bell</u>, 535 U.S. at 697. "For purposes of distinguishing between the rule of <u>Strickland</u> and that of <u>Cronic</u>," the Supreme Court held that a case does not come under <u>Cronic</u> merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. <u>Bell</u>, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." <u>Bell</u>, 535 U.S. at 697.

Such is not the case here. As will be discussed and outlined in more detail below, Scott's counsel challenged the State's evidence throughout the trial and the multiple offender hearing. The transcripts do not demonstrate that counsel was unfamiliar with the case or unprepared to challenge the State's evidence. Therefore, this is not the kind of extreme case to which <u>Cronic</u> would apply.

Furthermore, Scott has not shown how the funding of the office is of relevance to this court's analysis under <u>Strickland</u>. Scott must instead show that counsel's actual representation was deficient and prejudicial to the outcome of the case. Scott has not met this burden.

Contrary to Scott's suggestion, it is not required that his counsel prove the elements of simple robbery at trial. That was the State's burden. Instead, it was his counsel's role to create reasonable doubt where possible by challenging the State's

39

evidence needed to prove simple robbery and that Scott was a multiple offender.  As discussed below, counsel utilized strategic cross-examination of the witnesses to challenge the evidence, although her efforts proved unsuccessful.

With regard to the trial, to convict a defendant of simple robbery, the State is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) but not armed with a dangerous weapon.  La. Rev. Stat. Ann. § 14:65; State v. Draughn, 950 So.2d 583, 593 (La. 2007); State v. Smith, 962 So.2d 1190, 1197 (La. App. 2d Cir. 2007).

At trial, Officer Jamonsin John Ray testified that he was called to the scene for a reported fight in the parking lot at the Winn-Dixie.[60]  Upon his arrival, he was advised that Scott was being restrained by the manager and two other persons because he robbed the cashier.[61]  The witnesses informed him that Scott dove across the counter, took money, approximately $120, out of the register and ran out of the store.[62]

After noting an objection to the hearsay nature of the officer's testimony, Scott's counsel questioned him on cross-examination regarding the amount of money and the

---

[60]St. Rec. Vol. 2 of 5, Trial Transcript, p. 6, 6/17/97.

[61]Id., pp.6-7.

[62]Id., p.7.

location of the money seized.  Ray claimed that he retrieved the wet and chewed money from Scott's shirt pocket and that he placed it into evidence.[63]

Latrell Bilbrew also testified that she was working as a cashier at the Winn Dixie on the day of the robbery.[64]  She testified that she was checking-out a customer when Scott got into her line and picked up an item to purchase.  She stated that, when her drawer opened, he leaped across the counter and grabbed money from the drawer. Bilbrew testified that her reaction was to scream and close her drawer, which may have caught his hand or some money.[65]  She also saw Scott run out the door and the manager catch him.[66]  She testified that she was nervous and frightened.

Sinesio Canseco,[67] the manager of the Winn-Dixie, testified that he heard screaming in the front of the store.[68]  He saw Scott forcefully swing the lady in front of him to the side and his fist scraped her face.  He testified that Scott went over the counter and grabbed something out of register number six.  He then ran towards the front and tackled Scott.  During the struggle, Scott bit Canseco.

---

[63]Id., pp. 9-11.

[64]Id., pp. 12-13.

[65]Id., p. 13, 16.

[66]Id.

[67]Although his name is misspelled through most of the transcript, it is corrected at page 21.

[68]Id., p. 19.

Canseco stated that he went to Chalmette Medical Center for a tetanus shot and follow-up examination.  He also testified that after this incident, Bilbrew was terrified to work at a register and she was moved into the deli department.

On cross-examination, Canseco testified that, after he restrained Scott, he took money from Scott's mouth and later brought it into the office.[69]  He testified that the police saw it but they left all of the money, about $120, with the store.  He also denied seeing the police remove money from Scott's pocket.  Counsel also questioned him regarding his ability to see, or not see, what actually happened at the register.  He stated that he did not actually see what Scott took, if anything, out of the register.  He instead assumed it was money.

After this, the State recalled Officer Ray to clarify his testimony that, although the manager had retrieved some money, he recalled finding more money in Scott's shirt pocket.[70]  After reviewing the police report, Ray also testified that, although he thought he placed the money in evidence, the report confirmed that he left all of the money with the manager.

---

[69]Id., pp.22-23.

[70]Id., p. 25.

42

On cross-examination, Ray also varied his earlier statement regarding the amount of money he retrieved from Scott's pocket.[71]  He stated that he put the money he took from Scott's pocket with the money the manager took from Scott's mouth, and together it was approximately $120.

Through testimony of the witnesses, the State was able to prove that there was a taking of approximately $120 through use of force and fear.  Nevertheless, a review of the transcript reflects that Scott's counsel engaged in meaningful cross-examination of each of the State's witnesses at trial, which demonstrates her preparation.

For example, counsel cross-examined the first witness, Officer Ray, about the amount of money he retrieved, from where it was taken and whether he retained it as evidence.  She followed up this line of questioning with Canseco.  In doing so, she was able to obtain conflicting and contrary testimony with regard to the money, where it was found and what happened to it after the incident.  Her efforts caused the State to recall Ray in an effort to clarify the conflicts.  Counsel was also able to get Canseco to admit that he did not actually see Scott remove money from the cash drawer.

With regard to the multiple offender proceeding, the record also reflects that counsel was prepared to, and did in fact, challenge the multiple bill.  Her prepared arguments with regard to the applicable time period for the multiple offender proceeding

---

[71]Id., pp. 27-28.

were so convincing that the state trial court agreed with her and refused to find Scott to be a third offender. The trial court's initial finding was that Scott was a second offender.

Only after a successful appeal by the State was that ruling reversed. The Louisiana Fourth Circuit disagreed with the trial court and ordered that Scott be sentenced as a third offender. Counsel cannot be found to have acted deficiently simply because an argument is unsuccessful. See Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. 2004). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

In addition, I have already resolved that counsel's failure specifically to challenge the evidence of the 1994 conviction did not amount to ineffective assistance. Without more, Scott has failed to establish that counsel's performance was deficient or prejudicial in the manner defined by Strickland.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Elliot J. Scott, a/k/a Calvin Scott, for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

44

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days of entry of this order. (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___21st___ day of April, 2008.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE